**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| SMILE STREAM SOLUTIONS, LLC<br>1931 Liggett Road A16<br>Castle Rock, CO 80109,<br><br>Plaintiff,<br><br>v.<br><br>A2Z ORTHODONTICS, LLC<br>2218 Durham Court<br>Mount Laurel, NJ 08054,<br><br>Defendant. | CASE NO: |

## COMPLAINT

Plaintiff Smile Stream Solutions, LLC ("Smile Stream") hereby brings the following Complaint for preliminary and permanent injunctive relief against Defendant A2Z Orthodontics, LLC ("A2Z") for violations of the U.S. Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq., the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq., the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq., aiding and abetting breaches of the fiduciary duty and duty of loyalty and candor, tortious interference with contract and prospective business expectations, unfair competition, and civil conspiracy.

In support thereof, Smile Stream avers as follows:

1. This case is about Smile Stream's former employee, Terry Evans, stealing Smile Stream's confidential information and trade secrets in order to give his new company, A2Z, an illegal head start in the orthodontic supply industry. Smile Stream brings this civil action to put a stop to A2Z's ongoing unfair competition.

## I. THE PARTIES

2. Plaintiff Smile Stream Solutions, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 1931 Liggett Road A16, Castle Rock, Colorado 80109.

3. Defendant A2Z Orthodontics, LLC is a limited liability company organized under the laws of the State of New Jersey with its principal place of business at 2218 Durham Court, Mount Laurel, New Jersey 08054.

## II. JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because this action involves claims asserted pursuant to the DTSA, 18 U.S.C. §§ 1836, et seq., which constitutes an adequate and independent basis upon which this Court has federal subject matter jurisdiction.

5. The Court alternatively has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because this action involves claims asserted pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq., which constitutes an adequate and independent basis upon which this Court has federal subject matter jurisdiction.

6. The Court alternatively has diversity jurisdiction under 28 U.S.C. § 1332, because there is complete diversity of citizenship and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and this provides another alternative and independent basis for federal jurisdiction.

7. Venue is appropriate under 28 U.S.C. § 1391, because A2Z maintains its principal place of business as well as multiple offices in this District, and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

8. This Court has supplemental jurisdiction over Smile Stream's state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Smile Stream's federal DTSA claim that they form part of the same case or controversy under Article III of the United States Constitution.

9. This Court has personal jurisdiction over A2Z because A2Z is, upon information and belief, organized, registered, located, operated, and/or conducting business in New Jersey and maintains an address and principal place of business in Mount Laurel, New Jersey.

10. This matter arises in the Camden Vicinage because A2Z's offices are located in Burlington County, which is located in the Camden Vicinage. In addition, A2Z does business in the Camden Vicinage.

## III. FACTUAL ALLEGATIONS

### Smile Stream's Business and Confidential Information

11. Smile Stream is a full-service provider of high-quality orthodontic supplies.

12. Smile Stream offers a range of orthodontic product lines, exclusive licenses, and distribution rights, and in its marketplace represents best-in-class value across every product and service category.

13. The national orthodontic supply market is highly competitive.

14. Smile Stream's business success depends on its relationships with existing and prospective customers, suppliers, vendors, distributors, and other business partners.

15. Smile Stream derives significant competitive value from information that is not generally known to or readily ascertainable by competitors or the public.

16. Smile Stream's Confidential Information includes, and is not limited to, its:

- Customer information, such as purchasing and price history, ordering patterns, and product needs and preferences; and

- Supplier information; and
- Vendor information; and
- Pricing and sales information; and
- Revenue, margin, costs, and profit information; and
- Marketing and group purchasing organization data; and
- Product and part numbers and matrices; and
- Business strategies; and
- Product plans; and
- Supply sources; and
- Internal procedures; and
- Business methods; and
- Employee strengths, weaknesses, and compensation; and
- Vendor contracts and agreements and their terms.

(Smile Stream's "Confidential Information").

17. Smile Stream's Confidential Information is not static: the Confidential Information is updated continually to reflect changing market conditions, customer demand and preferences, and technological and product innovations.

18. Smile Stream's Confidential Information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means, by other persons or entities who can obtain economic value from its disclosure or use, and because it is not static.

19. For example, a competitor could exploit Smile Stream's confidential customer information, including purchasing and price history, ordering patterns, product needs and preferences, revenue, margin, costs, and profit information, by matching or beating the prices that Smile Stream offers to its customers. This would divert sales from Smile Stream to a competitor and result in a loss of revenue and profits by Smile Stream.

20. By way of further example, Smile Stream has a product and part number matrix. In it, each product offered by Smile Stream has a unique part number and code, which consist of combinations of letters and numbers. Customers and vendors use Smile Stream's unique codes to

identify products sold to and by Smile Stream among other companies and suppliers. The matrix's unique combinations of letters and numbers do not serve any purpose for Smile Stream's competitors in the marketing of their respective products, and constitute a compilation of Smile Stream's Confidential Information. If a competitor were to utilize Smile Stream's number matrix, or letter and number combinations similar to Smile Stream's combinations, then this could sabotage Smile Stream's business by causing misidentification of products by Smile Stream's vendors and customers.

21. These two examples are illustrative, and not definitive, of the exploitation of Smile Stream's different types of Confidential Information.

22. Smile Stream takes reasonable measures to maintain the secrecy of its Confidential Information, including by requiring employees such as Evans to execute confidentiality and proprietary-rights obligations, restricting use of company information to authorized business purposes, utilizing password-protected computers and information technology systems, maintaining secure physical offices, and requiring return of company documents, computers, and Confidential Information upon the end of an employee's employment with Smile Stream.

23. Smile Stream's Confidential Information constitutes trade secrets within the meaning of the DTSA, 18 U.S.C. § 1839.

24. Smile Stream uses its Confidential Information in interstate commerce, including in connection with the sale and supply of orthodontic products to customers and the management of supplier and vendor relationships.

**<u>Terry Evans' Employment With Smile Stream</u>**

25. On or about June 9, 2025, Smile Stream hired Evans as an employee.

26. During his employment with Smile Stream, Evans was provided access to Smile Stream's Confidential Information.

27. Evans' access to Smile Stream's Confidential Information was granted solely for the purpose of performing authorized duties for Smile Stream.

28. Evans was not authorized to use Smile Stream's Confidential Information for his own benefit, for the benefit of any competitor, or for the benefit of any business other than Smile Stream.

29. Evans knew that he was responsible for protecting Smile Stream's Confidential Information.

30. Evans agreed to comply with Smile Stream's Employee Non-Disclosure Policy, in which Evans promised that:

> Disclosure of company [Smile Stream] assets is strictly prohibited. [Smile Stream] assets are any equipment, tools, material, capital, or intellectual property owned by the company and furnished to us to perform our functions effectively. [Smile Stream] assets are expected to be used for the work-related purposes only, and should not be misused or disclosed for personal use, personal gain, or competitors['] advantage. This includes any [Smile Stream] email, any content through which is consider[ed] [Smile Stream] property as well.

<u>See</u> Exhibit A, a true and correct copy of Smile Stream Solutions Corporate Handbook ("Ex. A").

31. Evans also agreed to comply with Smile Stream's Code of Conduct policy, in which Evans further promised that:

> The purpose of this Code of Conduct is to make clear to our customers, both internal and external, what our Core Values are, and how we expect to uphold those values through the integrity of our behaviors on both an individual and organizational level.
>
> Ethical Business Conduct is paramount to our deliverance of quality overall, along with an exceptional user experience – whether in the development of our products, services, or people. Any violation of

> our Values, Standards, or Laws puts our company and our customers at risk. Therefore, it is important to read and commit to this policy both in signature and in practice.
>
> If you have any question regarding this Code of Conduct, or ever think that someone else ha[s] violated it, you are encouraged to exercise your voice and right to report it to whomever supervisor you are most comfortable confiding in. Smile Stream Solutions expects all of our employees to abide by and follow the Code of Conduct policy. Failure to do so can result in disciplinary action, including termination of employment or third party agreements. Therefore, this Code of Conduct also applies to our extended workforce and partners (temps, vendors, independent contractors, other such affiliates). Every employee of Smile Stream Solutions is expected to comply with company policies and codes, as well as the regulations and laws that govern the company.

See Ex. A.

32. Evans signed the acknowledgement of the Corporate Handbook, the Non-Disclosure Policy, and the Code of Conduct on June 9, 2025. See id.

33. Evans also signed Smile Stream's Confidentiality and Proprietary Rights Agreement ("Agreement"), wherein Evans acknowledged that:

> **Confidential Information.** The Employee [Evans] understands and acknowledges that during the course of employment by the Employer [Smile Stream], he/she [Evans] will have access to and learn about confidential, secret, and proprietary documents, materials, data, and other information, in tangible and intangible form, of and relating to the Employer Group and its businesses and existing and prospective customers, suppliers, investors, and other associated third parties ("Confidential Information"). The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group, for which remedies at law will not be adequate and may also cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages, and criminal penalties.

See Exhibit B, a true and correct copy of the Confidentiality and Proprietary Rights Agreement ("Ex. B"), at pp. 1-2 (emphasis in original).

34. Paragraph 1.1 further defines Confidential Information to include the information listed in Paragraph 16, above. See id.

35. In Paragraph 1.2(c) of the Agreement, Evans acknowledged that he would not:

> … access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of the Employer Group, except with the prior consent of an authorized officer acting on behalf of the Employer Group in each instance (and then, such removal shall be made only within the limits and to the extent of such duties or consent). The Employee understands and acknowledges that the Employee's obligations under this Agreement regarding any particular Confidential Information begin immediately and shall continue during and after the Employee's employment by the Employer until the Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or a breach by those acting in concert with the Employee or on the Employee's behalf.

See Ex. B, at p. 2.

36. In Paragraph 3.2 of the Agreement, Evans acknowledged that:

> **Exit Obligations.** Upon (i) voluntary or involuntary termination of the Employee's employment or (ii) the Employer's request at any time during the Employee's employment, the Employee shall (a) provide or return to the Employer any and all Employer Group property, including keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, cell phones, smartphones, PDAs, equipment, manuals, reports, files, books, compilations, work product, email messages, recordings, disks, thumb drives, or other removable information storage devices, hard drives, and all Employer Group documents and materials belonging to the Employer and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of the Employee, whether they were provided to the Employee by the Employer Group or any of its business associates or created by the Employee in connection with his/her employment by the Employer; and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in the Employee's possession or control, including those stored on any non-Employer Group devices, networks, storage locations, and media in the Employee's possession or control.

See id., at p. 5.

37. Evans signed the Agreement on June 9, 2025. See id.

38. Evans' employment with Smile Stream ended on October 3, 2025.

**Evans Launches A2Z *Sub Rosa* While Employed by Smile Stream**

39. While Evans was employed by Smile Stream, Evans launched A2Z.

40. Smile Stream did not know this.

41. A2Z is an orthodontic supplier.

42. A2Z competes directly with Smile Stream in the orthodontic supply industry.

43. In or about July 2025, just one month after Evans acknowledged his obligations regarding Smile Stream's Confidential Information, Evans was negotiating with Smile Stream's vendors on behalf of A2Z.

44. With one or more of these vendors, Evans entered into non-disclosure agreements on behalf of A2Z, to negotiate on behalf of A2Z with Smile Stream's vendors, while Evans was an employee of Smile Stream Solutions.

45. In one instance, Evans signed a non-disclosure agreement on behalf of A2Z, in his capacity as A2Z's Founder and President, to negotiate on behalf of A2Z with one of Smile Stream's vendors, while he was employed by Smile Stream Solutions.

46. Evans utilized cloud-based information technology platforms, including OneDrive, to transfer and store Smile Stream's Confidential Information, so that A2Z could use it.

47. Evans used Smile Stream's Confidential Information, which was residing on Smile Stream's computers, to help A2Z to compete against Smile Stream, while Evans was employed by Smile Stream.

48. Specifically, Evans mimicked Smile Stream's product and part number matrix to create A2Z's product numbers.

49. Also, Evans utilized Smile Stream's pricing system to establish A2Z's product prices, costs, and profit margins, which enabled A2Z to bring competing products to market with pricing known to be competitive or better than Smile Stream's pricing.

50. Upon information and belief, Evans played a role in hiring former Smile Stream Employees ("Former Smile Stream Employees") to join A2Z, and these Former Smile Stream Employees are helping Evans and A2Z to compete against Smile Stream.

51. After Evans' employment with Smile Stream ended, Smile Stream discovered Evans' and A2Z's misconduct.

52. Upon information and belief, A2Z knew or had reason to know that Evans' knowledge and possession of Smile Stream's Confidential Information arose from his former employment with Smile Stream and from duties owed to Smile Stream.

53. A2Z's acts will cause Smile Stream irreparable harm, particularly given the exploitation of Smile Stream's Confidential Information and trade secrets.

54. A2Z must be enjoined, as set forth below, to preserve the *status quo* and prevent further irreparable harm.

## IV. CAUSES OF ACTION

### COUNT ONE
### THREATENED MISAPPROPRIATION OF TRADE SECRETS
### U.S. DEFEND TRADE SECRETS ACT ("DTSA"), 18 U.S.C. §§ 1836, et seq.

55. The allegations of paragraphs 1 through 54 are incorporated herein by reference with the same force and effect as if set forth in full below.

56. The Confidential Information developed by Smile Stream constitutes trade secrets subject to protection under the DTSA.

57. Smile Stream owns and possesses trade secrets within the meaning of the DTSA, 18 U.S.C. § 1839.

58. Smile Stream's trade secrets include the Confidential Information identified in paragraph 16, above: customer information, such as purchasing and price history, ordering patterns, and product needs and preferences; supplier information, vendor information; pricing and sales information; revenue, margin, costs, and profit information; marketing and group purchasing organization data; product and part numbers and matrices; business strategies; product plans; supply sources; internal procedures; business methods; employee information; and vendor contracts and agreements and their terms.

59. Smile Stream's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, Defendant and other competitors who can profit from their use or disclosure.

60. Smile Stream has spent significant sums, time, effort, and resources to develop, maintain, update, and safeguard this information so that Smile Stream can market, sell, supply, price, and service its orthodontic products and manage its customer, supplier, vendor, distributor, buyer, and business-partner relationships.

61. Smile Stream has taken reasonable measures under the circumstances to maintain the secrecy of its trade secrets, including requiring Evans and other employees to execute and comply with confidentiality and proprietary-rights obligations in agreements and policies; restricting access and use to authorized company purposes; requiring return and deletion of company documents, property, and information upon termination of employment; and requiring Evans not to retain copies, duplicates, reproductions, or excerpts of Smile Stream's Confidential Information.

62. Evans had access to Smile Stream's trade secrets solely for the purpose of performing authorized duties for Smile Stream.

63. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Smile Stream policies with which Evans agreed to comply. See Ex. A.

64. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Agreement which provided Evans with notice of what he could not do. See Ex. B.

65. Evans, as a principal and agent of A2Z, has threatened to use and/or disclose Smile Stream's trade secrets in connection with the formation, launch, operation, marketing, sales, customer development, supplier development, pricing, and competitive activities of A2Z.

66. Upon information and belief, Evans, as a principal and agent of A2Z, has threatened to use and/or disclose Smile Stream's trade secrets to identify, solicit, service, divert, or attempt to divert Smile Stream's customers, prospective customers, suppliers, vendors, distributors, buyers, business partners, and business opportunities to A2Z.

67. A2Z has threatened to use Smile Stream's trade secrets, which were obtained by Evans during his employment with Smile Stream.

68. A2Z knew or had reason to know that the Smile Stream trade secrets in Evans' possession were trafficked improperly through Evans' employment with Smile Stream and were subject to confidentiality, fiduciary, statutory, and other legal obligations.

69. A2Z's threatened use or disclosure of Smile Stream's trade secrets jeopardizes the secrecy and value of Smile Stream's trade secrets.

70. The conduct of A2Z set forth in this Count and throughout this Complaint constitutes threatened misappropriation of Smile Stream's trade secrets in violation of the DTSA, because A2Z will use Smile Stream's trade secrets without Smile Stream's consent and despite knowledge that the trade secrets were acquired under circumstances giving rise to duties to maintain their secrecy and limit their use.

71. A2Z's threatened misappropriation of Smile Stream's trade secrets has caused and will continue to cause Smile Stream irreparable injury for which monetary damages alone are an inadequate remedy.

72. A2Z's threatened misappropriation of Smile Stream's trade secrets is willful and malicious.

73. A2Z's willful and malicious threatened misappropriation of Smile Stream's trade secrets justifies the award of exemplary damages and reasonable attorneys' fees to Smile Stream under the DTSA.

74. A2Z is directly and/or vicariously liable for the acts described herein.

75. As a consequence of the foregoing, Smile Stream has suffered and will continue to suffer injury, loss, damages, and irreparable harm, including but not limited to the impairment to the integrity and exclusive availability of Confidential Information that belongs to Smile Stream and resided on its computers and computer systems, as alleged above; confusion in the marketplace in which Smile Stream legitimately competes, as a result of A2Z's exploitation of Smile Stream's Confidential Information; and other damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

76. The acts described herein, as violations of the DTSA, are an adequate, independent legal basis upon which the Court can enter the injunctive relief requested by Smile Stream.

77. Smile Stream has no fully adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count One, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT TWO
## MISAPPROPRIATION OF TRADE SECRETS
## U.S. DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1836, et seq.

78. The allegations of paragraphs 1 through 77 are incorporated herein by reference with the same force and effect as if set forth in full below.

79. The Confidential Information developed by Smile Stream constitutes trade secrets subject to protection under the DTSA.

80. Smile Stream owns and possesses trade secrets within the meaning of the DTSA, 18 U.S.C. § 1839.

81. Smile Stream's trade secrets include the Confidential Information identified in paragraph 16, above: customer information, such as purchasing and price history, ordering patterns, and product needs and preferences; supplier information, vendor information; pricing and sales information; revenue, margin, costs, and profit information; marketing and group purchasing organization data; product and part numbers and matrices; business strategies; product plans; supply sources; internal procedures; business methods; employee information; and vendor contracts and agreements and their terms.

82. Smile Stream's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, Defendant and other competitors who can profit from their use or disclosure.

83. Smile Stream has spent significant sums, time, effort, and resources to develop, maintain, update, and safeguard this information so that Smile Stream can market, sell, supply, price, and service its orthodontic products and manage its customer, supplier, vendor, distributor, buyer, and business-partner relationships.

84. Smile Stream has taken reasonable measures under the circumstances to maintain the secrecy of its trade secrets, including requiring Evans and other employees to sign off and comply with confidentiality and proprietary-rights obligations in agreements and policies; restricting access and use to authorized company purposes; requiring return and deletion of company documents, property, and information upon termination of employment; and requiring Evans not to retain copies, duplicates, reproductions, or excerpts of Smile Stream's Confidential Information.

85. Evans had access to Smile Stream's trade secrets solely for the purpose of performing authorized duties for Smile Stream.

86. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Smile Stream policies with which Evans agreed to comply. See Ex. A.

87. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Agreement with which Evans agreed to comply. See Ex. B.

88. Evans formed, opened, prepared to open, and/or began operating A2Z while in possession of Smile Stream's trade secrets.

89. Evans, as a principal and agent of A2Z, retained, possessed, accessed, copied, duplicated, reproduced, excerpted, or transferred Smile Stream's trade secrets after his employment ended.

90. Evans, as a principal and agent of A2Z, used or disclosed Smile Stream's trade secrets in connection with the formation, launch, operation, marketing, sales, customer development, supplier development, pricing, and competitive activities of A2Z.

91. Upon information and belief, Evans, as a principal and agent of A2Z, has used Smile Stream's trade secrets to identify, solicit, service, divert, or attempt to divert Smile Stream's customers, prospective customers, suppliers, vendors, distributors, buyers, business partners, and business opportunities to A2Z.

92. A2Z knowingly received, possessed, benefited from, used and/or disclosed Smile Stream's trade secrets, which were obtained by Evans during his employment with Smile Stream.

93. A2Z knew or had reason to know that the Smile Stream trade secrets in Evans' possession were trafficked improperly through Evans' employment with Smile Stream and were subject to confidentiality, return, non-retention, fiduciary, and other legal obligations.

94. A2Z's possession, retention, use, and/or disclosure of Smile Stream's trade secrets threatens to destroy the secrecy and value of Smile Stream's trade secrets.

95. The conduct of A2Z set forth in this Count and throughout this Complaint constitutes misappropriation of Smile Stream's trade secrets in violation of the DTSA, because A2Z will use Smile Stream's trade secrets without Smile Stream's consent and despite knowledge

that the trade secrets were acquired under circumstances giving rise to duties to maintain their secrecy and limit their use.

96. A2Z's misappropriation of Smile Stream's trade secrets has caused and will continue to cause Smile Stream irreparable injury for which monetary damages alone are an inadequate remedy.

97. A2Z's misappropriation of Smile Stream's trade secrets is willful and malicious.

98. A2Z's willful and malicious misappropriation of Smile Stream's trade secrets justifies the award of exemplary damages and reasonable attorneys' fees to Smile Stream under the DTSA.

99. A2Z is directly and/or vicariously liable for the acts described herein.

100. As a consequence of the foregoing, Smile Stream has suffered and will continue to suffer injury, loss, damages, and irreparable harm, including but not limited to the impairment to the integrity and exclusive availability of Confidential Information that belongs to Smile Stream and resided on its computers and computer systems, as alleged above; confusion in the marketplace in which Smile Stream legitimately competes, as a result of A2Z's exploitation of Smile Stream's Confidential Information; and other damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

101. The acts described herein, as violations of the DTSA, are an adequate, independent legal basis upon which the Court can enter the injunctive relief requested by Smile Stream.

102. Smile Stream has no fully adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Two, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT THREE**
**THREATENED MISAPPROPRIATION OF TRADE SECRETS**
**THE NEW JERSEY TRADE SECRETS ACT ("NJTSA"), N.J.S.A. 56:15-1, et seq.**

103. The allegations of paragraphs 1 through 102 are incorporated herein by reference with the same force and effect as if set forth in full below.

104. The Confidential Information developed by Smile Stream constitutes trade secrets subject to protection under the NJTSA.

105. Smile Stream owns and possesses trade secrets within the meaning of the NJTSA.

106. Smile Stream's trade secrets include the Confidential Information identified in paragraph 16, above: customer information, such as purchasing and price history, ordering patterns, and product needs and preferences; supplier information, vendor information; pricing and sales information; revenue, margin, costs, and profit information; marketing and group purchasing organization data; product and part numbers and matrices; business strategies; product plans; supply sources; internal procedures; business methods; and vendor contracts and agreements and their terms.

107. Smile Stream's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, Defendant and other competitors who can profit from their use or disclosure.

108. Smile Stream has spent significant sums, time, effort, and resources to develop, maintain, update, and safeguard this information so that Smile Stream can market, sell, supply,

price, and service its orthodontic products and manage its customer, supplier, vendor, distributor, buyer, and business-partner relationships.

109. Smile Stream has taken reasonable measures under the circumstances to maintain the secrecy of its trade secrets, including requiring Evans and other employees to execute and comply with confidentiality and proprietary-rights obligations in agreements and policies; restricting access and use to authorized company purposes; requiring return and deletion of company documents, property, and information upon termination of employment; and requiring Evans not to retain copies, duplicates, reproductions, or excerpts of Smile Stream's Confidential Information.

110. Evans had access to Smile Stream's trade secrets solely for the purpose of performing authorized duties for Smile Stream.

111. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Smile Stream policies with which Evans agreed to comply. See Ex. A.

112. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Agreement with which Evans agreed to comply. See Ex. B.

113. Evans, as a principal and agent of A2Z, has threatened to use or disclose Smile Stream's trade secrets in connection with the formation, launch, operation, marketing, sales, customer development, supplier development, pricing, and competitive activities of A2Z.

114. Upon information and belief, Evans, as a principal and agent of A2Z, has threatened to use Smile Stream's trade secrets to identify, solicit, service, divert, or attempt to divert Smile

Stream's customers, prospective customers, suppliers, vendors, distributors, buyers, business partners, and business opportunities to A2Z.

115. A2Z has threatened to use or disclose Smile Stream's trade secrets, which were obtained by Evans during his employment with Smile Stream.

116. A2Z knew or had reason to know that the Smile Stream trade secrets in Evans' possession were obtained improperly through Evans' employment with Smile Stream and were subject to confidentiality, return, non-retention, fiduciary, and other legal obligations.

117. A2Z's threatened use or disclosure of Smile Stream's trade secrets jeopardizes the secrecy and value of Smile Stream's trade secrets.

118. The conduct of A2Z set forth in this Count and throughout this Complaint constitutes threatened misappropriation of Smile Stream's trade secrets in violation of the NJTSA, because A2Z will use Smile Stream's trade secrets without Smile Stream's consent and despite knowledge that the trade secrets were acquired under circumstances giving rise to duties to maintain their secrecy and limit their use.

119. A2Z's threatened misappropriation of Smile Stream's trade secrets has caused and will continue to cause Smile Stream irreparable injury for which monetary damages alone are an inadequate remedy.

120. A2Z's threatened misappropriation of Smile Stream's trade secrets is willful and malicious.

121. A2Z's willful and malicious threatened misappropriation of Smile Stream's trade secrets justifies the award of exemplary damages and reasonable attorneys' fees to Smile Stream under the NJTSA.

122. A2Z is directly and/or vicariously liable for the acts described herein.

123. As a consequence of the foregoing, Smile Stream has suffered and will continue to suffer injury, loss, damages, and irreparable harm, including but not limited to the impairment to the integrity and exclusive availability of Confidential Information that belongs to Smile Stream and resided on its computers and computer systems, as alleged above; confusion in the marketplace in which Smile Stream legitimately competes, as a result of A2Z's exploitation of Smile Stream's Confidential Information; and other damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

124. The acts described herein, as violations of the NJTSA, are an adequate, independent legal basis upon which the Court can enter the injunctive relief requested by Smile Stream.

125. Smile Stream has no fully adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Three, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT FOUR**
**MISAPPROPRIATION OF TRADE SECRETS**
**<u>THE NEW JERSEY TRADE SECRETS ACT, N.J.S.A. 56:15-1, et seq.</u>**

126. The allegations of paragraphs 1 through 125 are incorporated herein by reference with the same force and effect as if set forth in full below.

127. The Confidential Information developed by Smile Stream constitutes trade secrets subject to protection under the NJTSA.

128. Smile Stream owns and possesses trade secrets within the meaning of the NJTSA.

129. Smile Stream's trade secrets include, without limitation, customer information, customer lists, client information, client lists, supplier information, vendor information, distributor information, buyer information, pricing information, sales information, revenue information, costs, margins, marketing information, business strategies, product plans, supply sources, purchasing information, internal procedures, business methods, contracts, terms of agreements, negotiations, prospective transactions, and compilations of business data.

130. Smile Stream's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, A2Z and other persons or entities who can obtain economic value from their disclosure or use.

131. Smile Stream's trade secrets are valuable because they are not generally known or readily accessible, through proper means, to others who can profit from their use, and they are not readily available to the public or to Smile Stream's competitors.

132. Smile Stream spends significant time, effort, money, and resources to develop, maintain, update, and safeguard its trade secrets, which are of great competitive importance and commercial value to Smile Stream and to any competitor, including A2Z.

133. Smile Stream has made efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets, including requiring Evans to execute confidentiality and proprietary-rights obligations, restricting use of company information to authorized business purposes, requiring return and deletion of company documents and information upon termination of employment, and requiring Evans not to retain copies, duplicates, reproductions, or excerpts of Smile Stream's Confidential Information.

134. Evans had access to Smile Stream's trade secrets solely for the purpose of performing authorized duties for Smile Stream.

135. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Smile Stream policies with which Evans agreed to comply. See Ex. A.

136. Evans knew he was not authorized to use Smile Stream's trade secrets for the benefit of A2Z, or for the benefit of any business other than Smile Stream, pursuant to the Agreement with which Evans agreed to comply. See Ex. B.

137. Evans formed, opened, prepared to open, and/or began operating A2Z while in possession of Smile Stream's trade secrets.

138. Evans, as a principal and agent of A2Z, retained, possessed, accessed, copied, duplicated, reproduced, excerpted, or transferred Smile Stream's trade secrets after his employment ended.

139. Evans, as a principal and agent of A2Z, used or disclosed Smile Stream's trade secrets in connection with the formation, launch, operation, marketing, sales, customer development, supplier development, pricing, and competitive activities of A2Z.

140. Upon information and belief, Evans, as a principal and agent of A2Z, has used Smile Stream's trade secrets to identify, solicit, service, divert, or attempt to divert Smile Stream's customers, prospective customers, suppliers, vendors, distributors, buyers, business partners, and business opportunities to A2Z.

141. A2Z knowingly received, possessed, benefited from, used and/or disclosed Smile Stream's trade secrets, which were obtained by Evans during his employment with Smile Stream.

142. A2Z knew or had reason to know that the Smile Stream trade secrets in Evans' possession were trafficked improperly through Evans' employment with Smile Stream and were subject to confidentiality, return, non-retention, fiduciary, and other legal obligations.

143. A2Z's possession, retention, use, and/or disclosure of Smile Stream's trade secrets threatens to destroy the secrecy and value of Smile Stream's trade secrets.

144. The conduct of A2Z set forth in this Count and throughout this Complaint constitutes misappropriation of Smile Stream's trade secrets in violation of the NJTSA, because A2Z will use Smile Stream's trade secrets without Smile Stream's consent and despite knowledge that the trade secrets were acquired under circumstances giving rise to duties to maintain their secrecy and limit their use.

145. A2Z's misappropriation of Smile Stream's trade secrets has caused and will continue to cause Smile Stream irreparable injury for which monetary damages alone are an inadequate remedy.

146. A2Z's misappropriation of Smile Stream's trade secrets is willful and malicious.

147. A2Z's willful and malicious misappropriation of Smile Stream's trade secrets justifies the award of exemplary damages and reasonable attorneys' fees to Smile Stream under the NJTSA.

148. A2Z is directly and/or vicariously liable for the acts described herein.

149. As a consequence of the foregoing, Smile Stream has suffered and will continue to suffer injury, loss, damages, and irreparable harm, including but not limited to the impairment to the integrity and exclusive availability of Confidential Information that belongs to Smile Stream and resided on its computers and computer systems, as alleged above; confusion in the marketplace in which Smile Stream legitimately competes, as a result of A2Z's exploitation of Smile Stream's

Confidential Information; and other damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

150. The acts described herein, as violations of the NJTSA, are an adequate, independent legal basis upon which the Court can enter the injunctive relief requested by Smile Stream.

151. Smile Stream has no fully adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Four, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT FIVE**
**UNAUTHORIZED ACCESS OF SMILE STREAM'S COMPUTERS**
**THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030, et seq.**

152. The allegations of paragraphs 1 through 151 are incorporated herein by reference with the same force and effect as if set forth in full below.

153. Smile Stream's computers are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because they are computers purchased and used by Smile Stream in interstate or foreign commerce or communication.

154. Upon information and belief, A2Z utilized individuals working on A2Z's behalf, including Evans and Former Smile Stream Employees, to knowingly, intentionally, and with the intent to defraud Smile Stream, access Smile Stream's computers.

155. When these individuals accessed Smile Stream's computers, one or more of them was employed by Smile Stream and, therefore, was authorized to access Smile Stream's computers during their employment.

156. Through these individuals, A2Z accessed Smile Stream's computers to download, copy, transfer, or in some manner obtain files, documents, spreadsheets, programs, product codes, and/or electronically stored information containing Smile Stream's Confidential Information.

157. A2Z was not authorized to access Smile Stream's computers.

158. A2Z has never been authorized to access Smile Stream's computers.

159. A2Z cannot obtain through third-persons the authority to access Smile Stream's computers that A2Z itself does not have.

160. As a result, A2Z caused Smile Stream's damages and loss in excess of $5,000. This includes but is not limited to the cost to Smile Stream of responding to A2Z's violations described above, which consisted of an interruption of service and use of Smile Stream's computers in order to investigate and assess the unauthorized access and loss; a damage assessment; and the investigation of Smile Stream's computers and related systems following A2Z's violations, as alleged above.

161. As a consequence of the foregoing, Smile Stream has suffered and will continue to suffer injury, loss, damages, and irreparable harm, including but not limited to the impairment to the integrity and exclusive availability of Confidential Information that belongs to Smile Stream and resided on its computers and computer systems, as alleged above; confusion in the marketplace in which Smile Stream legitimately competes, as a result of A2Z's exploitation of Smile Stream's Confidential Information; and other damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be

determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

162. Smile Stream has no fully adequate remedy at law.

163. The acts described herein, as violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq., are an adequate, independent basis upon which the Court can enter the injunctive relief sought by Smile Stream.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Five, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT SIX**
**AIDING AND ABETTING**
**BREACHES OF FIDUCIARY DUTY AND DUTY OF LOYALTY**
**(ACQUIRING AN INTEREST ADVERSE TO ONE'S PRINCIPAL)**

164. The allegations of paragraphs 1 through 163 are incorporated herein by reference with the same force and effect as if set forth in full below.

165. Evans owed Smile Stream fiduciary duties of loyalty and candor arising from his employment relationship, agency relationship, access to confidential information, and position of trust.

166. One such duty that Evans had was to act in Smile Stream's best interests during his employment, and Evans knew this or should have known this.

167. Evans was obligated by these fiduciary duties to not divert Smile Stream's employees, business opportunities, customers, prospective customers, suppliers, vendors, or other business relationships for his own benefit or for the benefit of A2Z.

168. Evans was obligated not to compete unfairly against Smile Stream through his exploitation of Smile Stream's goodwill relationships, opportunities, or assets entrusted to him during his employment, for the benefit of A2Z.

169. Evans breached his fiduciary duties and duties of loyalty by diverting or attempting to divert Smile Stream's employees, customers, prospective customers, suppliers, vendors, business partners, and/or business opportunities to himself and/or A2Z.

170. Evans' breaches were knowing, intentional, willful, and malicious, and they were deliberately facilitated and furthered by A2Z, knowing they would harm Smile Stream.

171. As a direct and proximate result of Evans' breaches of fiduciary duty and duty of loyalty, Smile Stream has suffered and will continue to suffer damages, unjust enrichment, loss of business advantage, loss of competitive position, and irreparable harm.

172. Smile Stream has no fully adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Six, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT SEVEN
## AIDING AND ABETTING
## BREACHES OF FIDUCIARY DUTY AND DUTY OF LOYALTY
## (MISAPPROPRIATION OF CONFIDENTIAL INFORMATION)

173. The allegations of paragraphs 1 through 172 are incorporated herein by reference with the same force and effect as if set forth in full below.

174. Evans owed Smile Stream fiduciary duties and duties of loyalty arising from his employment relationship, agency relationship, access to confidential information, and position of trust.

175. One such duty that Evans had was to not use Smile Stream's Confidential Information for his own benefit or for the benefit of a competitor.

176. Also, Evans was obligated not to compete unfairly against Smile Stream through misuse of Confidential Information entrusted to him during his employment.

177. Upon information and belief, Evans breached his fiduciary duties and duties of loyalty by retaining, acquiring, copying, duplicating, reproducing, excerpting, accessing, using, disclosing, or threatening to use or disclose Smile Stream's Confidential Information for his own benefit and/or for the benefit of A2Z.

178. Upon information and belief, Evans breached his fiduciary duties and duties of loyalty by using Smile Stream's Confidential Information to form, launch, operate, market, sell for, solicit for, develop customers or suppliers for, and otherwise compete through A2Z.

179. Upon information and belief, Evans breached his fiduciary duties and duties of loyalty by using the Confidential Information to divert or attempt to divert Smile Stream's employees, customers, prospective customers, suppliers, vendors, business partners, and/or business opportunities to himself and/or A2Z.

180. Evans' breaches were knowing, intentional, willful, and malicious, and they were deliberately facilitated and furthered by A2Z, knowing they would harm Smile Stream.

181. As a direct and proximate result of Evans' breaches of fiduciary duty and duty of loyalty, Smile Stream has suffered and will continue to suffer damages, unjust enrichment, loss of business advantage, loss of competitive position, and irreparable harm.

182. Smile Stream has no adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Seven, and

award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT EIGHT**
**AIDING AND ABETTING**
**BREACHES OF FIDUCIARY DUTY AND DUTY OF LOYALTY**
**(VIOLATION OF COMPANY POLICIES)**

183. The allegations of paragraphs 1 through 182 are incorporated herein by reference with the same force and effect as if set forth in full below.

184. Evans owed Smile Stream fiduciary duties and duties of loyalty arising from his employment relationship and position of trust.

185. One such duty that Evans had was to comply with Smile Stream's company policies, and Evans knew this or should have known this.

186. Smile Stream's policies served to protect Smile Stream from the faithless misconduct that Evans engaged in to further the interests of A2Z.

187. Evans breached his fiduciary duties and duties of loyalty by violating the policies that he promised to adhere to during his employment with Smile Stream. See Ex. A.

188. Evans' breaches were knowing, intentional, willful, and malicious, and they were deliberately facilitated and furthered by A2Z, knowing they would harm Smile Stream.

189. Each instance in which Evans violated one or more policies, with the assistance and/or support of A2Z, constitutes an adequate and independent basis for a finding and judgment against A2Z.

190. As a direct and proximate result of Evans' breaches of fiduciary duty and duty of loyalty, Smile Stream has suffered and will continue to suffer damages, unjust enrichment, loss of business advantage, loss of competitive position, and irreparable harm.

191. Smile Stream has no adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Eight, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT NINE
## TORTIOUS INTERFERENCE WITH CONTRACT

192. The allegations of paragraphs 1 through 191 are incorporated herein by reference with the same force and effect as if set forth in full below.

193. Smile Stream has developed and maintained and continues to develop and maintain contractual and prospective relationships with customers, vendors, and suppliers.

194. Evans knew, or reasonably should have known, of these relationships as a result of his employment with Smile Stream.

195. A2Z knew, or reasonably should have known, of these contractual relationships as a result of A2Z's employees' work for Smile Stream.

196. A2Z intentionally, maliciously, and improperly interfered with, and continues to interfere with, Smile Stream's contractual relationships with its customers, vendors, and suppliers, including but not limited to inducing them to sever, not to commence, or not to continue or renew existing contractual relationships with Smile Stream.

197. A2Z has used and continues to use Smile Stream's trade secrets and Confidential Information to compete unlawfully with Smile Stream and to undermine Smile Stream's existing contractual relationships with customers, vendors, and suppliers.

198. As a result, Smile Stream has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Nine, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT TEN**
**<u>TORTIOUS INTERFERENCE WITH BUSINESS EXPECTATIONS</u>**

199. The allegations of paragraphs 1 through 198 are incorporated herein by reference with the same force and effect as if set forth in full below.

200. Smile Stream has developed and maintained and continues to develop and maintain prospective relationships with customers, vendors, and suppliers.

201. Evans knew, or reasonably should have known, of these relationships as a result of his employment with Smile Stream.

202. A2Z knew, or reasonably should have known, of these relationships as a result of A2Z's employees' work for Smile Stream.

203. A2Z intentionally, maliciously, and improperly interfered with, and continues to interfere with, Smile Stream's prospective relationships with its customers, vendors, and suppliers, including but not limited to inducing them to not do business with and/or enter into contractual relationships with Smile Stream.

204. A2Z has and will continue to use Smile Stream's Confidential Information and trade secrets to compete unlawfully with Smile Stream and to undermine Smile Stream's prospective relationships with customers, vendors, and suppliers.

205. As a result, Smile Stream has suffered and will continue to suffer injury, damages, and irreparable harm.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Ten, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

## COUNT ELEVEN
## UNFAIR COMPETITION

206. The allegations of paragraphs 1 through 205 are incorporated herein by reference with the same force and effect as if set forth in full below.

207. By virtue of A2Z's acts and omissions set forth in detail above, A2Z has engaged in unfair competition with Smile Stream, by threatening to and actually misappropriating its Confidential Information and trade secrets; by interfering with its existing and prospective customer relationships, its contracts, and its employment relationships; by improperly capitalizing on the goodwill of Smile Stream; and by employing unfair and deceptive practices intended to hinder, delay, divert, or prevent Smile Stream from fairly competing with A2Z.

208. A2Z has engaged in such acts or omissions maliciously and for the sole purpose of inflicting harm on Smile Stream, or to benefit itself at the expense of Smile Stream.

209. As a result, Smile Stream has suffered and will continue to suffer injury, damages, and irreparable harm.

210. Smile Stream has no adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Eleven, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT TWELVE**
**CIVIL CONSPIRACY**

211. The allegations of paragraphs 1 through 210 are incorporated herein by reference with the same force and effect as if set forth in full below.

212. A2Z, Evans, and the Former Smile Stream Employees conspired and agreed to engage in the unlawful and tortious conduct described herein, deliberately engaged in such conduct in furtherance of their unlawful plans and schemes, acted on behalf of one another at all relevant times, intentionally and/or knowingly accepted the illicit benefits of the conspiracy, and intentionally and/or knowingly participated in, profited from, and/or ratified the misconduct of one another.

213. A2Z is liable for the conduct of Evans and the Former Smile Stream Employees and any other participants in the conspiracy.

214. As a result of this misconduct, Smile Stream has suffered and will continue to suffer injury, damages, and irreparable harm.

215. Smile Stream has no fully adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Twelve, and award the equitable and legal remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems equitable and just.

**COUNT THIRTEEN**
**INJUNCTIVE RELIEF**

216. The averments of paragraphs 1 through 215 are incorporated by reference herein with the same force and effect as if set forth in full below.

217. By virtue of the foregoing, Smile Stream has demonstrated a likelihood of success on the merits of multiple of its claims against A2Z, any one of which would support preliminary and/or permanent injunctive relief against A2Z.

218. The balance of equities favors issuance of preliminary and permanent injunctive relief, because A2Z has no legitimate interest in possessing, retaining, using, disclosing, copying, or benefiting from Smile Stream's Confidential Information and trade secrets or competing unfairly against Smile Stream.

219. Injunctive relief will serve the public interest by protecting trade secrets, enforcing valid corporate policies, preventing unfair competition, preventing and rectifying confusion caused by misappropriated product number matrices, and preserving the integrity of confidential information.

220. Unless A2Z is enjoined from the foregoing conduct, Smile Stream will be irreparably harmed by A2Z's continued:

(a.) Possession and/or control of electronic and/or hard copies of Smile Stream's Confidential Information; and/or

(b.) Disclosure and/or misuse of Smile Stream's Confidential Information; and/or

(c.) Use or threatened use of Smile Stream's Confidential Information to compete with Smile Stream; and/or

(d.) Use or threatened use of Smile Stream's Confidential Information to solicit, divert, target, or service Smile Stream's customers, prospective customers, suppliers, vendors, business partners, and business opportunities; and/or

(e.) Any further use of a product number matrix that was based on Smile Stream's matrix; and/or

(f.) Other acts that violate the DTSA, NJTSA, Computer Fraud and Abuse Act, Smile Stream's company policies, Evans' fiduciary duties and duties of loyalty, and applicable common law.

221. Smile Stream has no fully adequate remedy at law.

WHEREFORE, Plaintiff Smile Stream Solutions, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant A2Z Orthodontics, LLC on Count Thirteen, and award the equitable remedies sought in the Prayer for Relief in this Complaint, and any other relief the Court deems just.

## PRAYER FOR RELIEF

In sum, by virtue of the foregoing acts and conduct, Smile Stream demands judgment in its favor and against Defendant A2Z Orthodontics, LLC, and respectfully requests that Permanent Injunction Orders issue, enjoining and directing Defendant, directly or indirectly, and whether alone or in concert with other individuals:

1. To immediately identify and return to Smile Stream all copies, hard and electronic, of:

(a.) Smile Stream's Confidential Information and trade secrets; and

(b.) All documents, records, files, media, emails, messages, compilations, work product, recordings, disks, thumb drives, removable information storage devices, hard drives, cloud-stored materials, electronically stored information, and other materials that belong to Smile Stream.

2. From using, disclosing, sharing, transmitting, transferring, publishing, communicating, relying upon, benefiting from, or making available by any means Smile Stream's Confidential Information, trade secrets, or information derived therefrom.

3. From using Smile Stream's Confidential Information or trade secrets to solicit, divert, target, contact, service, sell to, purchase from, or otherwise do business with Smile Stream's customers, prospective customers, suppliers, vendors, distributors, buyers, business partners, or business opportunities.

4. From using Smile Stream's Confidential Information or trade secrets to operate, market, sell for, price products or services for, supply, purchase for, develop, or otherwise compete through A2Z or any other competing business.

5. To provide an accounting of all persons and entities to whom Defendant disclosed, transferred, transmitted, provided, made available, or otherwise communicated Smile Stream's Confidential Information or trade secrets.

6. To provide an accounting of all A2Z revenue, from its creation to date, and going forward, from its customers, prospective customers, clients, and prospective clients, referral sources, business partners, and business opportunities, so that Smile Stream can determine which of these were diverted unlawfully from Smile Stream.

7. To award Smile Stream compensatory damages, consequential damages, unjust enrichment, exemplary damages, attorneys' fees, costs, and all other monetary relief available at law or in equity.

8. Costs and fees incurred to investigate and address the harm and damage resulting from the unauthorized access of Smile Stream's computers and related information technology systems.

9. To award pre-judgment and post-judgment interest to the fullest extent allowed by law.

10. Any and all relief pursuant to 28 U.S.C. § 1927.

11. To grant such other and further relief as the Court deems just, equitable, appropriate, and proper.

**JURY DEMAND**

Smile Stream demands a trial by jury on any issue so triable by right.

Respectfully submitted by:

SMILE STREAM SOLUTIONS, LLC

Dated: July 31, 2026

*/s/ Brent A. Cossrow*
Brent A. Cossrow

New Jersey Atty. I.D. No. 040982001
United States District Court for the District of New Jersey Atty. I.D. No. BC8436

FISHER & PHILLIPS LLP
Two Logan Square
100 N. 18th Street – 12th Floor
Philadelphia, PA 19103
Telephone: (610) 230-2135
bcossrow@fisherphillips.com